IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SIDNEY ALLEN WORTHEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-04-976-W ) |
| WILLIAM HULL, *et al.*, | ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON
THE CLAIMS INVOLVING DR. WILLIAM HULL**

Plaintiff Sidney Worthen is a state prisoner and appears *pro se*, bringing the present action under 42 U.S.C. § 1983. Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 Jury Trial Demanded by Judge or by Magistrate (Aug. 9, 2004) ("Complaint"). In part, Dr. William Hull has moved for dismissal on grounds of the Eleventh Amendment and for summary judgment. Motion to Dismiss and/or for Summary Judgment and Brief in Support of Defendant, William Hull, O.D. at pp. 1, 7-8, 21 (Dec. 3, 2004) ("Defendant Hull's Dispositive Motion").[1] In his official capacity, Defendant Hull is entitled to dismissal without prejudice on the claims for damages and equitable relief involving sunglasses, diet, the law library, and legal training. On the remaining claims, Dr. Hull is entitled to summary judgment.

---

[1] In addition, Dr. Hull seeks dismissal for failure to state a valid claim. Defendant Hull's Dispositive Motion at pp. 1, 12, 14, 16. The Court need not address this aspect of Dr. Hull's motion.

I.      FACTUAL BACKGROUND

On September 12, 2002, Mr. Worthen arrived at the Lexington Assessment and Reception Center ("LARC"). *See* Complaint at p. 2. That evening, Mr. Worthen realized that his prescription sunglasses and glass case were missing. *See id.* at p. 3. The Plaintiff repeatedly sought return of these items. *See* Appendix to Complaint, Ex. DD & FF (Aug. 17, 2004) ("Appendix Vol. 1"). Dr. Hull, a facility optometrist, had not prescribed tinted lenses for Mr. Worthen; thus, authorities told the Plaintiff that he could purchase solar shields from the canteen to meet his needs. *Id.*, Ex. DD. Mr. Worthen notified prison officials that the solar shields did not fit and again requested prescription sunglasses. *Id.*[2]

On August 5, 2003, Mr. Worthen was examined by Dr. Tammy Yanonke, an ophthalmologist at the Dean McGee Eye Institute. *See id.*, Ex. D & E. Following the examination, Dr. Yanonke diagnosed Mr. Worthen as a "glaucoma suspect," recommended a reexamination at the Dean McGee Eye Institute in two to three weeks, and prescribed sunglasses. *Id.*, Ex. E.

On the day of Dr. Yanonke's examination, Dr. Hull stated in writing to Mr. Worthen's unit manager: "Due to medical reasons, [Mr. Worthen] should be allowed to wear Solar Shields that are self-purchased from the canteen." *Id.* A handwritten note on the bottom of Dr. Yanonke's prescription stated: "(Inmate Copy.) Sunglasses Issued this Date. 8-5-03." *Id.*

---

[2]     Property officer Linda Hill donated Mr. Worthen's prescription sunglasses on October 24, 2002. *See* Appendix Vol. 1, Ex. EE.

Approximately three weeks later, Mr. Worthen filed a request to staff, inquiring about prescription sunglasses and his follow-up appointment at the Dean McGee Eye Institute. *Id.*, Ex. FF. Dr. Hull responded, informing the Plaintiff: (1) He could purchase solar shields in lieu of prescription sunglasses; (2) no further glaucoma tests were necessary; and (3) Dr. Hull "need[ed] to monitor [Mr. Worthen's] glaucoma every 3 mos." *Id.* Mr. Worthen again notified prison officials that the solar shields did not fit his head. *See id.*

Mr. Worthen alleges that Defendant Hull had acted with deliberate indifference to serious medical needs through inadequate vision care. Complaint at pp. 3-6; Plaintiff's Reply to Motion to Dismiss and/or for Summary Judgment and Brief in Support of Defendant, William Hull, O.D. at pp. 2-6, 8, 10-15 (Dec. 28, 2004) ("Plaintiff's Response Brief"). Suing Dr. Hull in his official and individual capacities,[3] Mr. Worthen seeks damages[4] and equitable relief.[5]

---

[3]   Complaint at p. 1.

[4]   In the complaint, Mr. Worthen does not specifically request damages. *See* Complaint at pp. 15-16 ("Request for Relief"). But after identifying various remedies, the Plaintiff asks for "[a]ll other [r]elief the Court deems just and necessary" for adjudication of the claims. *Id.* at p. 16. Liberally construed, these requests would encompass damages. *See Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003) (holding that a *pro se* prisoner's "prayer for 'such other relief'" should be read to include a request for nominal damages); *see also Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999) ("Although plaintiff's complaint does not include an express request for injunctive relief, a liberal construction of his allegations demonstrates a clear desire for injunctive relief."); *cf.* Fed. R. Civ. P. 54(c) (a judgment, other than one for default, "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings").

[5]   Complaint at pp. 15-16.

II.     THE OFFICIAL CAPACITY CLAIMS: ELEVENTH AMENDMENT IMMUNITY

Mr. Worthen seeks damages, an examination by an ophthalmologist, a permanent injunction to possess prescription sunglasses, implementation of a diet plan, updates to the prison law library, and training for legal research.[6] Defendant Hull argues that Mr. Worthen's official capacity claims are foreclosed by the Eleventh Amendment. Dispositive Motion of Defendant Hull at pp. 7-8.[7] The undersigned agrees with respect to the claims for damages, implementation of a diet plan, updates to the prison law library, and training for legal research. But the Eleventh Amendment does not encompass the claims relating to an eye examination and a permanent injunction entitling Mr. Worthen to sunglasses.

   A.     Eleventh Amendment Immunity

The Eleventh Amendment bars suit in federal court against a State by citizens of another state or by the State's own citizens. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). When a suit names a state official as a defendant, the Eleventh Amendment still bars the action "if the state is the real substantial party in interest."

---

[6]     Mr. Worthen also requests an order compelling compliance with the decree in *Battle v. Anderson* by updating legal materials and providing legal training for research assistants. Complaint at p. 13. If the Plaintiff is an intended third-party beneficiary to the decree entered in *Battle v. Anderson*, he might have standing to enforce the terms of the decree. *See Floyd v. Ortiz*, 300 F.3d 1223, 1226 (10th Cir. 2002). But Mr. Worthen cannot obtain enforcement of the decree through a Section 1983 action. *See Klein v. Zavaras*, 80 F.3d 432, 435 (10th Cir. 1996) (holding that a Section 1983 action is not an appropriate means to seek enforcement of a consent decree).

[7]     Dr. Hull also argues that the official capacity claims for money damages are barred under *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Dispositive Motion of Defendant Hull at pp. 6-7. But the Court need not address the applicability of *Will*, as the Eleventh Amendment forecloses these claims. *See infra* pp. 4-6.

*Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001).  This determination turns on the type of relief sought by the plaintiffs.  *See id.*

    B.    <u>Standard</u>

Eleventh Amendment immunity involves this Court's subject-matter jurisdiction,[8] and Dr. Hull raises the issue based solely on allegations in the complaint.  In this situation, the Court "must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

    C.    <u>Retrospective Relief: The Claim for Damages</u>

In his official capacity, Dr. Hull is protected by the Eleventh Amendment on the official capacity claim for damages.

Remedies designed to compensate individuals for past violations or to indirectly encourage compliance with federal law through deterrence are considered "retrospective" and insufficient to overcome the dictates of the Eleventh Amendment.  *See Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).  This principle applies if the relief sought is damages or is tantamount to an award of damages which would result in fiscal consequences to the state treasury.  *See id.* at 278.

An exception exists when Eleventh Amendment immunity has been waived by the state or abrogated by Congress.  *See Chaffin v. Kansas State Fair Board*, 348 F.3d 850, 866 (10th Cir. 2003).  But the State of Oklahoma has not waived its Eleventh Amendment

---

[8]     *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

immunity. *See* Okla. Stat. tit. 51 § 152.1(B) (2001) ("it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution"). And Congress did not abrogate the states' Eleventh Amendment immunity through the enactment of Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, the Eleventh Amendment forecloses any cause of action against Defendant Hull for monetary damages in his official capacity. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 120 (1984). The Court should dismiss these claims without prejudice to refiling.[9]

    D.    <u>Prospective Relief: The Claims for Equitable Relief</u>

In part, the Plaintiff asserts equitable claims involving diet, legal training, and the law library. *See supra* p. 4. For these claims, Dr. Hull is protected in his official capacity under the Eleventh Amendment. But this constitutional provision does not foreclose the equitable claims in Dr. Hull's official capacity for replacement of sunglasses and examination by an ophthalmologist.

Official capacity claims for equitable relief are not ordinarily subject to the Eleventh Amendment when they are prospective. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1998). Prospective relief is "designed to end a continuing violation of federal law [and is] necessary

---

[9]    Eleventh Amendment immunity forecloses suit in federal court, but does not bar litigation in state court. *See State of Maine v. Thiboutot*, 448 U.S. 1, 9 n.7 (1980). Thus, dismissal on grounds of the Eleventh Amendment should ordinarily be without prejudice to assertion of the claim in state court. *See Divine Church of God and Christ v. Taxation & Revenue Department*, 116 F.3d 1489, 1997 WL 355326, Westlaw op. at 2 (10th Cir. June 27, 1997) (unpublished op.) (remanding with instructions to dismiss claims, without prejudice, based on the Eleventh Amendment).

to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The distinction between prospective and retrospective relief turns primarily on whether the remedy is designed to prevent future harms, rather than past wrongs. *See Elephant Butte Irrigation District of New Mexico v. Department of the Interior*, 160 F.3d 602, 611 (10th Cir. 1998) ("The 'overriding question' is not whether the relief will require the payment of state funds, but whether the relief will 'remedy future rather than past wrongs.'" (citation omitted)). Thus, relief can be prospective even if it entails an ancillary effect on the state treasury. *See Edelman v. Jordan*, 415 U.S. 651, 668 (1974); *see also Reames v. State of Oklahoma*, 411 F.3d 1164, 1167-68 (10th Cir. 2005).[10] But prospective equitable relief is available, notwithstanding the Eleventh Amendment, only when the state officer being sued has "'some connection' to the enforcement of the allegedly defective act." *Prairie Band Potawatomi Nation v. Wagnon*, 402 F.3d 1015, 1027 (10th Cir. 2005); *see also Ex parte Young*, 209 U.S. 123, 157 (1908).[11]

---

[10] There the court stated:

> However, the possibility -- indeed, even the "inexorability" -- that a court's ruling may ultimately lead to the payment of state funds does not necessarily transmute the relief at issue into an impermissible award of damages. Nevertheless, if the relief sought only requires state expenditures pursuant to a court order requiring a change in state conduct, the Eleventh Amendment will not ordinarily preclude actions brought against the state.

*Reames v. State of Oklahoma*, 411 F.3d 1164, 1167 (10th Cir. 2005) (citation omitted).

[11] In *Ex parte Young*, the Supreme Court stated:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must

In part, the Plaintiff seeks replacement of his sunglasses, implementation of a diet plan, updates to the prison law library, and training for legal research. *See supra* p. 4. The Plaintiff does not suggest any connection between Dr. Hull and the issues involving diet, the law library, or legal training for inmates. Thus, the Plaintiff has not alleged the required "connection" between Dr. Hull and these forms of equitable relief. The result is that these claims against Dr. Hull are, in effect, claims against the State and are foreclosed in federal court under the Eleventh Amendment. *See supra* p. 7.

Mr. Worthen has also requested replacement of sunglasses and examination by an ophthalmologist. *See supra* p. 4. These requests are prospective and bear at least "some connection" to Dr. Hull's duties. Accordingly, the Court should reject the Eleventh Amendment defense on the Plaintiff's claims for equitable relief involving an examination by an ophthalmologist and delivery of prescription sunglasses.[12]

---

       have some connection with the enforcement of the act, or else it is merely making
       him a party as a representative of the state, and thereby attempting to make the state
       a party.

*Ex parte Young*, 209 U.S. at 157.

[12] Mr. Worthen asserts that Defendant Hull has waived any Eleventh Amendment immunity under the United States Supreme Court's holding in *Frew v. Hawkins*, 540 U.S. 431 (2004). Plaintiff's Response Brief at p. 9. In *Frew*, the petitioners argued that the State had waived its Eleventh Amendment immunity, but the Supreme Court expressly declined to address the argument. *Frew v. Hawkins*, 540 U.S. at 436-37. As a result, the decision cannot possibly be read to support Mr. Worthen's theory of waiver.

III.    THE PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

These recommendations would leave only the Plaintiff's Eighth Amendment claims against Dr. Hull: (1) in his individual capacity for damages, and (2) in his official capacity for a permanent injunction requiring delivery of prescription sunglasses and examination by an ophthalmologist. *See supra* pp. 4-8. Mr. Worthen cannot survive summary judgment on these theories.

    A.    <u>Standard for Summary Judgment</u>

Summary judgment is necessary when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When only one reasonable outcome exists, summary judgment is necessary. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

    B.    <u>The Eighth Amendment</u>

Under the Eighth Amendment, prison officials must "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As a result, deliberate indifference to a prisoner's serious medical needs is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). An official is guilty of

"deliberate indifference" only if he has a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### C.   Denial of Prescription Sunglasses

Mr. Worthen claims denial of medically necessary prescription sunglasses in violation of the Eighth Amendment. *See supra* p. 3. But the Plaintiff lacks any evidence of deliberate indifference by Dr. Hull in the denial of protective eyewear. As a result, Defendant Hull is entitled to summary judgment on this claim.[13]

As stated above, the Eighth Amendment is violated only if the defendant had acted with "deliberate indifference." *See supra* pp. 9-10. Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). For example, deliberate indifference may exist when prison officials have prevented an inmate from receiving recommended treatment. *See Ramos v. Lamm*, 639 F.2d

---

[13]   The Court may assume arguendo that the Plaintiff's need for the sunglasses was "sufficiently serious" to merit protection under the Eighth Amendment. *Compare Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (inmate's allegations that he required prescription sunglasses stated a claim that his medical needs were "sufficiently serious"), *and Jones v. Sheahan*, 1995 WL 88913, Westlaw op. at 4 (N.D. Ill. Mar. 2, 1995) (unpublished op.) ("Jones sufficiently alleges a 'serious medical need' because he alleges that a physician prescribed the eyeglasses as treatment for his serious eye problem."), *with Walker v. Pete*, 76 Fed. Appx. 186, 188 (9th Cir. Sept. 22, 2003) (unpublished op.) (holding that a prisoner plaintiff had "failed to raise a genuine issue of material fact as to whether the temporary seizure of his eyeglasses resulted in a sufficiently serious deprivation" (citation omitted)).

559, 575 (10th Cir. 1980). But the Plaintiff lacks any evidence of deliberate indifference by Dr. Hull in the denial of sunglasses, and he is entitled to summary judgment on this claim.[14]

The complaint includes allegations that Dr. Hull had known: (1) The Plaintiff had a medical need for sunglasses; (2) the prescription sunglasses had been taken; and (3) the solar shields from the canteen did not fit Mr. Worthen. Complaint at p. 5. But the undisputed evidence is that Dr. Hull did not act with a sufficiently culpable state of mind.

Shortly after Mr. Worthen had arrived at LARC, he sought recovery of the sunglasses which had allegedly been confiscated by a property officer. *See* Appendix Vol. 1, Ex. DD. In response, the facility warden informed the Plaintiff that Dr. Hull had approved solar shields from the canteen. *Id.* In an appeal to the Department of Corrections ("DOC"), Mr. Worthen complained that the solar shields did not fit, stated that he was suffering from photophobia and diabetic retinopathy, and requested prescription sunglasses. *Id.* Mr. Worthen allegedly sent a carbon copy of the appeal to Dr. Hull. *See id.* But the Plaintiff does not provide any proof that Dr. Hull actually knew about the inadequacy of the solar shields or the need for his intervention. *See Reyes v. Ashcroft*, 358 F.3d 592, 594 (9th Cir. 2004) (a "cc" notation indicates, at best, that the author intended to send notice; but it is not proof that notification was actually sent).

---

[14] In part of his brief, Dr. Hull appears to request only dismissal, stating: "Plaintiff's complaint, on its face, fails to even allege [deliberate indifference] against Dr. Hull, and he is entitled to dismissal of the Complaint as against him." Defendant Hull's Dispositive Motion at p. 14. But in his argument on whether the Plaintiff's needs were "sufficiently serious," Dr. Hull also requested summary judgment on the Eighth Amendment claim. *Id.* at p. 12.

In August 2003, Dr. Yanonke prescribed tinted lenses, and Dr. Hull apparently agreed that Mr. Worthen had a medical need for protective eyewear. *See* Appendix, Vol. 1, Ex. E; Special Report, Attachment 5. Although Dr. Yanonke had prescribed sunglasses, Dr. Hull was not obliged to fill the prescription. Instead, the doctor treated Mr. Worthen's needs with solar shields from the canteen. *See* Special Report, Attachment 6. Mr. Worthen complained about the fit, but has offered no evidence to conclude that Dr. Hull had known about the inadequacy of the solar shields or the need for him to act.[15] The absence of such evidence is fatal to Mr. Worthen's claim against Dr. Hull for a failure to provide sunglasses.[16]

---

[15] Following Dr. Hull's prescription, Mr. Worthen notified the DOC medical services administrator that the solar shields did not fit and requested prescription sunglasses. Appendix Vol. 1, Ex. FF. But the Plaintiff has not presented evidence of the same type of request to Dr. Hull.

[16] *See Smith v. Duncan*, 98 F.3d 1342, 1996 WL 583413, Westlaw op. at 2 (6th Cir. Oct. 9, 1996) (unpublished op.) (upholding dismissal of a claim against a prison optometrist, based on allegedly erroneous eyeglass prescriptions, in light of the absence of facts reflecting deliberate indifference); *Hatch v. O'Leary*, 986 F.2d 1424, 1993 WL 53179, Westlaw op. at 1, 3 (7th Cir. Mar. 2, 1993) (unpublished op.) (upholding summary judgment for a prison nurse, who allegedly downplayed an inmate's complaint about his eyeglasses, because the allegedly erroneous advice did not reflect an intent to cause harm); *Davidson v. Scully*, 155 F. Supp. 2d 77, 89 (S.D. N.Y. 2001) ("Even if plaintiff establishes that defendants have been incompetent in the filling of his eyeglass prescriptions, medical malpractice does not establish deliberate indifference under the Eighth Amendment." (citation omitted)); *Koehl v. Dalsheim*, 1995 WL 331905, Westlaw op. at 3 (S. D. N.Y. June 5, 1995) (unpublished op.) (holding that "the taking of [a prisoner's] prescription sunglasses does not rise to the level of a constitutional violation," as it is "not so egregious as to constitute the 'wanton infliction of pain' or to be 'repugnant to the conscience of mankind'" (citation omitted)); *Jones v. Sheahan*, 1995 WL 88913, Westlaw op. at 3 (N.D. Ill. Mar. 2, 1995) (unpublished op.) (holding that an ophthalmologist's prescription for goggles and an eye patch, instead of tinted glasses, does not state a valid claim for constitutionally inadequate medical care).

D.      Defendant Hull's Alleged Delay in Vision Care

Mr. Worthen also alleges that Dr. Hull had acted with deliberate indifference in delaying glaucoma treatment and treatment by an ophthalmologist. Complaint at p. 5; Plaintiff's Response Brief at pp. 2-4, 6, 8. The Court should conclude that Dr. Hull is entitled to summary judgment on these claims.

In August 2003, Mr. Worthen was seen by Dr. Yanonke at the Dean McGee Eye Institute. *See* Appendix Vol. 1, Ex. E; Special Report, Attachment 3. Dr. Yanonke diagnosed Mr. Worthen as a "glaucoma suspect" and recommended reexamination at the Dean McGee Eye Institute in two to three weeks. *Id.* Dr. Hull disagreed with Dr. Yanonke's recommendation, but told the Plaintiff that he would monitor the glaucoma every three months. *See* Appendix Vol. 1, Ex. F & FF. According to Mr. Worthen, deliberate indifference was evidenced by delay in the follow-up treatment for glaucoma and in treatment by an ophthalmologist. Complaint at pp. 4-6; Plaintiff's Response Brief at pp. 2-4, 5-6, 11; Appendix to Complaint - Volume Two in Reply to Defendant's Summary Judgment & Motions to Dismiss Along with Special Report and Defendants' Joint Response to Plaintiff's Motion for Class Certification of "Claims IV and V" of the "Complaint", Ex. NN (Dec. 28, 2004) ("Appendix Vol. 2").[17] But the Plaintiff's evidence does not create a triable issue of fact on the element of deliberate indifference.

---

[17]   After his August 2003 examination, the Plaintiff states that he was examined by Dr. Hull and an ophthalmologist in August 2004. Plaintiff's Response Brief at pp. 3, 5; *see* Appendix Vol. 2, Ex. NN.

Mr. Worthen has presented evidence that Dr. Hull was careless in failing to monitor the glaucoma every three months.[18] But negligence is not enough for a violation of the Eighth Amendment. *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

According to Mr. Worthen, Dr. Hull had also delayed treatment by an ophthalmologist. Complaint at pp. 4-6. But the Defendant presented uncontroverted evidence that Dr. Hull had felt that such treatment was not warranted. *See* Special Report, Attachment 6. Even if Dr. Hull had been incorrect, the erroneous judgment would not constitute deliberate indifference. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).[19] As a result, Dr. Hull's alleged delay in sending the Plaintiff to an ophthalmologist would not violate the Eighth Amendment. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (upholding summary judgment for the defendants because of the absence of medical evidence reflecting harm from prison officials' alleged delay in providing an inmate with sunglasses).

---

[18] For example, in a sworn affidavit, Mr. Worthen stated that Dr. Hull had acknowledged that he "was terrible at setting appointments." Appendix, Vol. 2, Ex. NN.

[19] The Plaintiff suggests that as a mere optometrist, Dr. Hull should have followed the recommendations of Dr. Yanonke because the latter was an ophthalmologist. Plaintiff's Response Brief at p. 2. But the difference in designations did not create a constitutional obligation for Dr. Hull to follow the ophthalmologist's recommendations. According to the Oklahoma Board of Examiners in Optometry, a licensed optometrist is "certified to diagnose, treat, and manage glaucoma patients." Appendix, Vol. 1, Ex. KK.

## IV.   QUALIFIED IMMUNITY

Defendant Hull also seeks dismissal and/or summary judgment on grounds of qualified immunity. Defendant Hull's Dispositive Motion at pp. 16-21. But the Court need not consider the qualified immunity defense in light of the necessity of dismissal or summary judgment on other grounds. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998) ("the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all").

## V.   SUMMARY OF RECOMMENDATIONS

Defendant Hull is entitled to Eleventh Amendment immunity on the official capacity claims for damages and equitable relief involving the law library, legal training, and diet. The Court should grant summary judgment to Dr. Hull on the remaining claims.

## VI.   NOTICE OF RIGHT TO OBJECT

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by August 19, 2005. *See* W.D. Okla. Local Civil Rule 72.1(a). The failure to timely object would foreclose appellate review of the suggested rulings. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## IV.   QUALIFIED IMMUNITY

Defendant Hull also seeks dismissal and/or summary judgment on grounds of qualified immunity. Defendant Hull's Dispositive Motion at pp. 16-21. But the Court need not consider the qualified immunity defense in light of the necessity of dismissal or summary judgment on other grounds. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998) ("the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all").

## V.   SUMMARY OF RECOMMENDATIONS

Defendant Hull is entitled to Eleventh Amendment immunity on the official capacity claims for damages and equitable relief involving the law library, legal training, and diet. The Court should grant summary judgment to Dr. Hull on the remaining claims.

## VI.   NOTICE OF RIGHT TO OBJECT

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by August 19, 2005. *See* W.D. Okla. Local Civil Rule 72.1(a). The failure to timely object would foreclose appellate review of the suggested rulings. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

VII.   STATUS OF REFERRAL

   The referral is not terminated.

   Entered this 29th day of July, 2005.

   _____
   Robert E. Bacharach
   United States Magistrate Judge